Good morning, your honors. May it please the court, Rebecca Jones appearing on behalf of Ricardo Rubio-Garcia. I'd like to reserve two minutes for rebuttal. At this stage in the proceedings, particularly in view of the supplemental briefing requested by this court, neither this court nor myself has any idea what exactly is on the table here. It's either a trial on a very large conspiracy that failed to connect Mr. Rubio-Garcia to a 30-defendant scheme covering the years 2007 to 2012, or it's a trial on a single load that improperly tried to leverage evidence from the larger scheme to persuade jurors that Mr. Rubio was guilty. I don't know enough about California law. It seems to me that, or the law of the circuit, it seems to me that if you are involved in a subset of activities which is part of a broader conspiracy, you are guilty of the broader conspiracy. Now, that may have sentencing implications, but I'm not sure I understand that. I mean, if you engage in intentional conduct which is linked to a larger conspiracy, I mean, you have to know the amount of drugs involved for sentencing and things of that nature, but I don't understand that. It seems to me that the smaller conspiracy was part of the larger conspiracy, and that to the extent that the indictment wasn't given and to the extent that there was an undue emphasis upon the larger conspiracy, that actually benefited your client. So actually, Your Honor, first of all, he doesn't actually have to know the quantity for sentencing purposes. Are you sure? Yeah. You can sentence somebody. You can sentence somebody for 100 kilos and they don't have to know it's 100 kilos. That is different. Thank God I'm in Maryland. I think that's U.S. Supreme Court law. But the U.S. Supreme Court also held in Cadillacos, which is quite a long time ago and does apply to Maryland, that when you have a hub and spokes type of conspiracy like that alleged here, you have to connect the spokes with a rim. And if you don't connect the spokes with a rim, then if the government, who has the charging discretion in a particular case like this, if they say, we're not going to just charge him with one little load, we're going to charge him as being part of a larger conspiracy, if they don't connect the spokes with a hub, it's a not guilty. And I invite the Court to look at Cadillacos. I know Cadillacos. I don't agree with that. You don't agree with Cadillacos? No, I don't think that you have to prove in every conspiracy that you know every conspirator. Pardon? That you have to know every conspirator. No, no, that's not what Cadillacos says. No, it's not. No, and that's not what I'm arguing. What I'm arguing is, is that there has to be something rather than one little hub doing little individual things here and there. There has to be a reason that the people who are on the outer parts of the rim have some reason to know that there's other people out there. For example, you know, if I am dealing methamphetamine, and I always go to a particular house in Los Angeles to pick up my stuff, and I see people coming and going, and I have no idea who they are, but they certainly aren't just like friendly neighbors bringing over macaroni and cheese for dinner, I have reason to believe that there's other couriers or other sellers coming and going out of that house, and therefore I could conceivably be connected to the larger conspiracy. Well, the indictment wasn't submitted, but there was evidence of the broader conspiracy. Did you object to it? On this indictment issue, there was no objection on the indictment issue. But the indictment wasn't submitted, but wasn't there evidence from the agent about the broader conspiracy? There was evidence, yes. And did you object? Pardon? Was there an objection made to that? To the larger conspiracy? No. No. So, but what my concern is, as I put forth in my opening brief, is when you, the evidence of the broader conspiracy had a lot of problems that are set forth in my brief. I mean, one of them is that the agent was allowed to give all this testimony, again, unobjected to, I realize we're dealing in plain error territory here, about, you know, we knew that Nell was a drug dealer, we knew that this was a drug deal going on, we knew, blah, blah, blah. And the jurors had no way of measuring the validity of those opinions or the accuracy of those opinions. And we have a great case in California, if you want to look at some California law, called People v. Gardelli, which is a gang case. But it talks about, and I'm sure there's a similar concept in federal law, that an opinion built on a house of sand is worthless. Okay? The jurors actually have to hear some kind of basis for the opinion. That's why we don't let law enforcement officers just walk into court and say, hi, I arrested him, I know he's guilty. Okay? He has to actually provide some facts that support these opinions, and there's no facts supporting the opinions that Cavalieri gave regarding certain aspects of this larger drug conspiracy. And so what happened in this case is, you know, the government only connected my client to one single load in very, very tenuous ways, and then was able to say, oh, but there's this huge conspiracy, and we were on all these thousands of wiretaps, and we knew there were all these drugs being crossed. And, by the way, after Mr. Rubio's involvement, we have three other loads or no, excuse me, there's two loads after and one load before, and we know that Nell was responsible for 1,000 kilos. Why wasn't there objection made to the broader conspiracy evidence? I don't know. And, to be honest, Your Honor, I believe trial counsel has now passed away, so I can't even ask him. So I would have objected, but, again, that doesn't preclude this court from reviewing the errors, and particularly when you're looking at the quantity and quality of errors that happened in this case and the confusion that's created because the government is allowed to come in at closing, okay, and say he was involved in a drug deal, he's guilty, you must convict, which is not what he was charged with. He was not charged with being involved in one drug deal. He was charged with participating in a large conspiracy. Sorry, Your Honor. Which version of the conspiracy should we look at at this point for your argument that there's a lack of evidence to support the conviction? A charged conspiracy, which is the gigantic conspiracy. But if the jury, it seems like you're arguing things that are in conflict, and I'm really struggling with how we can do this. Okay. If the jury believed that all it needed to do was find that he had participated in a conspiracy to engage in a single drug deal, if that's what the jury believed, then shouldn't we evaluate whether there's substantial evidence to support that? No, because the jury has to, the jury is supposed to be passing on the charged conduct. And if you look at the indictment, he's not charged with conspiring to participate in one load. He's charged with conspiring to participate in a wide-ranging conspiracy over five years. But I think your argument is that that's not really what happened at trial. I mean, if what really happened at trial is that everything the jury was told would lead the jury to believe that all they needed to do was find a single agreement to engage in a single drug transaction, then why isn't the sufficiency of the evidence question about that? It's so odd to say that part of the error is that the jury could find this narrower thing, and so there's a variance or there's a constructive amendment or something, to say that, and at the same time say, but when we're trying to figure out if the jury had enough evidence, we look at this other thing. I just am not sure what to do with this case, because those things that you're saying seem to be in tension. I don't think they're in tension. Maybe I'm not articulating them correctly. I mean, what he was charged with was big conspiracy. Okay? So every criminal defendant who comes into court is supposed to know what am I charged with. I'm charged with – So, I mean, like, if that's what he's charged with, then it's not error to introduce evidence of that, right? Your argument that it's – Oh, right, right. Okay, so I get the court's point now. Right. So the admission of this other stuff – Is only error when the actual crime is the smaller one, which I'm kind of with you. Maybe that is true, but then we should look at the smaller one when we're thinking about whether there was evidence to support that conviction. Right. So here's what I think that maybe this can clarify everything, because I tried to clarify it while I'm preparing for argument. I believe that if we are looking at is he connected to the gigantic conspiracy, it's close to a no-brainer, Justice Mott's notwithstanding. You know, under Kodiakos, it's not even close. There's no connection between – If you look at the indictment, you can't even really figure out the structure of the conspiracy that's alleged. Nell is the closest human being that's identified as a hub, but it's really just a bunch of random drug deals that are thrown together in the same indictment. And the proof at trial did not establish any kind of rhyme or reason or structure to the organization that was being alleged. So I think if you're looking at – But what if we think that's not the question? I mean, I don't have any reason looking at this record to think that the jury thought what its job was, was to figure out whether he was part of this big conspiracy. It seems like the jury probably thought they just had to decide whether he committed that drug deal that day with an agreement to do so. But the problem with that, Your Honor, is that's not what he was charged with. He wasn't charged with one – So that's a variance or constructive amendment problem, not a sufficiency of the evidence problem, right? Right, right. So step one is if he's really charged with, which is what the indictment says, giant conspiracy, there's no rim, he's acquitted, get out of prison and go home. Okay? If it's the other, if he really was only charged with – Well, not charged, but at trial, what was at issue? If he was really only being tried on the little load, okay, then all that other evidence was irrelevant, prejudicial, improper, and shouldn't have been admitted. So the little load trial was unfair. But the problem we have then is we're on plain error review, and given the uncertainty, it's a little hard to say it was plain error until later at the trial when it became clear it was narrower. I mean, it sort of evolved as it went along, it seems, about what was really being – he was really trying to be accused of. Which just kind of stinks. It's just very smelly, and if it's very, very smelly, to me that's error affecting his substantial rights and his rights to due process in a fair trial. I mean, I've identified other errors in the record. Again, the case agent opining on my client's guilt, no matter which charges you're looking at, you can't do that. You can't have a case agent come in and say, we decided he was guilty, we decided he was involved in a drug deal. And where in the record did he say, we decided he was guilty? Well, he didn't use the word guilty. That was the insinuation. I have the cites very specific at, in my – I believe it's argument number three about the improper opinion saying these are the statements he made that were equivalent to Rubio was guilty. He said, we decided there was a drug deal. These phone calls mean Rubio and UM2 were involved in the drug deal. You know, that's beyond the pale. Similarly, although I realize it's a little bit far afield, but it's really problematic that the improper cross-examination of the defense expert stunk to high heaven and then put a stink on the entire defense case. And even the government has conceded that some of that cross-examination was inappropriate. So, again, it's not whether it just discredited this particular witness whose testimony wasn't that powerful in the first place. It's does it discredit the entire defense case and does that help render as a piece of the building blocks that go into a plain error analysis mean that the trial was fundamentally unfair? In what way did this shift that you're saying really was unfair that seems to have happened at trial about what was charged versus what seemed to ultimately be at issue? How did it affect the defense strategy? Did it prejudice the defense strategy? It certainly could have, but the problem is when it happens, right, that's sort of an extra record question because you don't know how defense counsel would have tried the case differently had he understood that all I'm defending against is a tiny little conspiracy on December 4th and 5th. I mean, if you look at his closing argument, he said things like they didn't provide any evidence that Mr. Rubio is on the tapes before December 4th or after December 5th. They didn't prove that he was connected to the larger conspiracy. So, clearly, he thought, as I thought when I was writing my briefs in this case, hey, they didn't prove the rim, cariocos, I walk, that's it. So there's no way of knowing how defense counsel would have defended differently. Now, obviously, he had sort of a parallel defense, which is it's not even my client on the phone call, okay, which didn't go very far, unfortunately. But, you know, you try these cases differently down in the southern district. They do lots and lots of border busts. I'm sure not in the central district as much, but you try them quite differently than you would try a big conspiracy. And if I was looking at this case, again, when I look at the case on appeal, I'm like, they didn't do the rim, done. But it's an entirely different defense to say, oh, no, I'm only charged with conspiring on one tiny little load. Then maybe I need to put on maybe I need to try to bring in more evidence to explain how he got brought into this and look for some of these witnesses. Tell us about the testimony relating to the unknowing mule. You know, he didn't use the word mule and he didn't use the blind mule word, but he said everything but. And he said, in my experience, these organizations never use people who don't know that they're involved in a drug deal. Is there a difference between knowing where the stash house is and not knowing that there's narcotics in the car when you cross the border? There potentially is. I mean, in terms of who knows what. I mean, it's not. Is it unreasonable to say, in my experience, I've never known somebody who is. Unknowing. To know where the stash houses. Didn't they say both here, though, that in their experience, you don't use someone who doesn't know where the stash houses and you don't know you someone who doesn't know that there are drugs in the car, didn't they? Didn't you say both of those things? Although obviously the driver I mean, the government's theory was that the driver didn't know where the stash house was. So they were clearly already trying. You know, the government's theory was that there were levels of knowingness in the case and people were compartmentalized. And I don't think it's a stretch at all to think that somebody may have just put Mr. Rubio in that car and said, tell him how to get to Chewy's house. And kept him isolated from the fact that there's drugs involved, which would protect that protects the load more than telling people, you know, saying, hey, you're driving. You're going to give directions to a house is full of cocaine, especially when you have somebody who's not involved in the rest of this conspiracy and has, you know, no track record of being a reliable foot soldier. And I am near. We'll give you a minute for rebuttal after the government speaks. Thank you very much. Morning, Your Honors. Carrie O'Neill on behalf of the United States. I'd actually just like to take a step back for a moment and focus this court's attention on the substantive count as well here. Count 11. Before I address the conspiracy count, the possession with intent to distribute count does not rise or fall with count one in this case. And that's because even if the government failed to prove defendant knew more than existence of this one time deal, which is assuredly not our position, the possession count is firmly supported on an aiding and abetting theory under Boykin and United States versus Smith. And it's also supported under the joint venture analysis for constructive possession. So I just want to make clear at the outset that count one and count 11 do not rise and fall together. And as set forth based on the phone calls, the defendant's giving two nail of directions about how to get from Mexicali, which special agent Connors testified to was a hub for distributing drugs from Mexico to the United States. Defendant's presence on December 5th, his casual wave and look at the car before he stepped into Zazueta's car. All the inferences suggesting that he was leading that car to the stash house. Count 11 stands on its own in regards to count one. I think at its core, the dispute here is centering on whether proof of defendants participation in one transaction with several indications that his knowledge went beyond just that one deal is sufficient under this court's case law to uphold the conspiracy conviction. This court has never actually held that proof of participation in only one transaction is per se insufficient to establish knowledge. But why wasn't that all that was charged then? And then why was there all this evidence offered by the government about the larger conspiracy? Well, so that's a two-part question. And I think the government is well within its rights when it's constructing an indictment to not parcel out 60 separate indictments for purposes of efficiency, for purposes of joint trials. It just so happened that this defendant proceeded to trial by himself, which actually, Your Honors, most likely protected him from all types of what could be prejudicial spillover, multiple conspiracy arguments. So in a way, the fact that he proceeded to trial by himself actually protected him. On the second part of the question. Sorry, let's stay on that for a second. Can you point to any case where this court or the Supreme Court has upheld a change from what was charged to what happened at trial as significant as this? So I know we have cases where it's about a subset of the indictment is what ends up being charged. And we say that's permissible. It's just a variance and it's permissible. But it's when there are like two things. And so one gets charged or three and it's two. This is like 65 and it goes to one. I mean, the ratio is way different than any of the cases I could find. I'm sorry. You mean like 65 defendants, 65 defendants and actions and years and days? I mean, I mean, this huge amount of time with a huge amount of people with a huge amount of transactions is in the indictment. And you get this poor guy with one phone call in one day where he's involved. And that's it. So the ratio of what the indictment looked like compared to what actually this guy was arguably shown to have done at trial is so different than any of the cases I could find where a variance was found to be OK. And I'm wondering if you know of any others or can help me with any precedent that says this kind of change is fair to the defendant. Well, I think we sort of have to go to guiding principles here. And a lot of the what's driving the constructive amendment and variance case law is a broadening of the indictment. And I mean, it's clear that is not what happened here. And that would be black letter constructive amendment. That would be black letter law variance. What's happening here is a narrowing. But it is a narrowing in which the government still put the defendant completely on notice of the charges that were levied against him. The defendant, his counsel conceded the existence of the Sendez Ramirez organization in his opening statement. And in his closing, he conceded the existence of this smaller subagreement. And so the government is entitled to narrow its case. And here it did not impermissibly do so because the defendant had the full panoply of his defense available to him. But not of his defense, which it was going to be. There was no rim. I didn't know about the rest of this conspiracy. He could have come to trial thinking that that was going to be a winning defense. And the government shifts from charging him with this big thing that he had a lot of reason to say, you have no evidence I knew about it, to telling the jury at the end of the day that all they have to find is a single agreement, which that's true. If that had been I mean, that would have been OK if that had been what he knew he was going on trial for. But he shows up to trial with a defense about the big thing. And I don't understand how it's OK to switch midstream like this. Well, I dispute the underlying premise in your question. I don't think the government switched midstream. I think what the government did in this case was evaluated this large indictment that it had with 60 defendants and over 200 overt acts, the fact that it was proceeding to trial on one defendant, and thought what is the least prejudicial way we can present this case for this defendant to show his intent, to show not only his participation in this December 5th, 2009 deal, but to show what else was in the record that evidenced his knowledge that there was a broader conspiracy going on. That's why evidence of nails. And so what was that? I mean, I let you talk about the single count without interrupting. But what evidence do we have about any intent or any knowledge that he had about anything larger, anything beyond that one day? OK. Your Honor, there's sort of two main facts in the record that I can point to to support that his knowledge extended beyond that. The first is in his phone call with now. So originally you and to introduces defendant to now as the guy who knows all about that, that that in and of itself is indicia of experience on defendants part of getting from Mexicali to the United States. But can't you just know how to do that if you visit your aunt? Yes. OK. But I think laying the groundwork there, that's the initial introduction. So defendant gets on the call with now and he explains this is the route he takes. He takes the 10 now immediately then references our routes, suggesting that there are other routes that he takes. I think there that that puts the defendant on notice that there are others participating in this broader conspiracy beyond him, beyond the exact people he's dealing with. There's a reference to our roots by now. I mean, couldn't so that could be, you know, my family takes these different. I mean, I agree with you, but we've got to do this under the Neville's framework. And the problem with all of defendant sufficiency cases is that they're pre Neville's cases. In fact, one of them cited in her reply, Penagos is explicitly called out in Neville's for taking the wrong analysis, which is at the outset asking whether or not there's an innocent explanation for that. That's not how the Neville's analysis proceeds. We've got to construe all reasonable inferences in favor of the government. Ask then, only then, if given any additional evidence of innocence, a reasonable juror could find in favor of the government. So I don't think at the outset we can quarrel with the flip side. So we've got this. So we use different routes. Is there more? There is more, Your Honor. I think the fact here that defendant was the one, the inference in the record is quite clear, that defendant is the one who is leading Zazueta and UM-2 and the F-150 to the stash house. That's key. That's key because as an umagat, where umagat was his conviction was found to be sufficient, it is indicia of his vaunted position in this conspiracy. S.A. Connors testified in his expert capacity that only people who are involved in securing and distributing the drugs have knowledge about where the stash house is. So this is a defendant who has that high-level type of knowledge, number one, which is indicative that he is aware of the broader narcotics distribution scheme going on here, which this Court said in Brown we could infer. Number two, I mean, on a more granular level, he has to know who's at that stash house. He knows the address, he knows the location, and that's the inference in the record that's fair to take, and that gives him knowledge of other co-conspirators beyond those he is specifically dealing with in this December 4th, 5th period of time. That's sort of inference upon inference, though, right? I mean, maybe we can give you the fact that he knows his way around this town means he knows this is a stash house, but how do we know that he knows the people at the stash house? I think, Your Honor, if you don't want to take that, what seems to me to be a logical leap, I think it is fair to say, coupled with S.A. Connor's testimony, that his knowledge of where the stash house is puts him in a vaunted role within this larger drug conspiracy organization. This is not information that is handed out willy-nilly, and I think Umagat is instructive on this point. I'll concede, this is a one-transaction case, and we're asking the court to make the inferences that the jury made and find that it's sufficient, but in Umagat, the court did do that, and it said specifically that Umagat's awareness of and participation in one transaction does not in itself connect him to the entire month-long conspiracy, and this is at Penn Site 774, but the circumstances surrounding his affiliation with the conspirators, the sophistication of the arrangements, which we have here, and his role, the crucial importance of his role to the final transaction, do combine to support the existence of that connection, and I would argue, if this court faithfully applies the Neville's analysis, that it was sufficient here. There was no prejudicial variance to the defendant in terms of how he presented his defense. There was no effect on his sentence. The government did not – What was the maximum on account of 11? What was the maximum statutory penalty? I don't know, Your Honor. Did the sentencing receive – Well, he received the 10-year mandatory minimum. On the conspiracy count? Was that a mandatory minimum on the single transaction? Well, that's easy to find out. But even if it is, we have law in the circuit, don't we, that says the additional conviction we still have to review and we still have to consider whether it's valid even if it looks like the sentence would have been the same. Sure. But my point in terms of arguing the prejudice and Kodiakos, which is a multiple conspiracies case, is that we didn't have any of that here, and I do want to push back on the idea that the government was overreaching in its presentation of its case or unfairly narrowing the case during the course of the proceedings. I just don't think that happened. I think it was presenting this subagreement from which the jurors could infer that the defendant knew about a larger conspiracy. But why didn't the government ask for the jury instructions to give dates of the conspiracy at issue or describe the conspiracy at issue? I mean, the model jury instructions provide for that, and that wasn't done. Right. I don't know why the date of the conspiracy wasn't inserted in there. I mean, it's not an element of the statute, and as I pointed out in the supplemental brief, the jury, through the trial testimony and the opening statements, was aware that the time period that was being presented wasn't 2007 to 2012. It was this 2009 time period. And, in fact, defense counsel did what I thought to be, upon reading the record, a very good job of saying, look, the government is focusing on this subagreement in 2009. You don't see my client before the December 5th deal. You don't see him afterwards. I mean, he's very aware of the defenses that were available here and argued them persuasively. The jury just didn't believe it. Could you speak to the blind mule issue and explain why the government didn't put on false testimony in this case? Sure. So the government's position is that there was no NAPUI error here, and this has to be reviewed for plain error. The defendant did object to the unwitting courier testimony, but he did so on 704B expert grounds, and I reviewed the motion in Lemonet. I don't see anything in there about a claim that this type of testimony would be absolutely false. What about the institutional relationship between this Court and the U.S. Attorney's Office? I mean, there are two unpublished opinions in which the U.S. Attorney's Office has said, you know, we're not going to use this. There isn't such a thing as a blind mule. So I understand, Your Honor. So I have two responses. The first, colloquially, is this is not a blind mule case. This is not a border bust case. This happened here in Pomona. This is not a blind mule border bust case. Moreover, the defendant's ---- But it's exactly the same principle. He's saying I didn't know there were drugs in the car, and the expert gets up and says they never put drugs in the car with someone who doesn't know there are drugs in the car. But, Your Honor, he didn't say I never. And if he had said I never, then we would be a lot closer to NAPUI error, because the statement has to be actually false. What he said was, and you're right. You said this before. There were sort of two statements that get us into this territory. In my experience, drug trafficking organizations do not use people unfamiliar with drug trafficking and transporting drugs. That's accurate. That is not, in fact, actually false. But so does that mean you can just put in my experience before any false statement and make it not false? I don't think so, Your Honor. I think, generally speaking, this is true. But the problem ---- No, no. But it doesn't ---- Well, read it again. In my experience, drug trafficking organizations do not use people unfamiliar with drug trafficking and transporting drugs. He doesn't say it never happens. So if you take off in my experience, the statement is, drug trafficking organizations do not do this. That is the same as saying they never do this. I don't know what the difference is between do not and never. I mean, there's no most of the time or sometimes. It's a statement, not, you know, not as they don't do it. I don't understand what you're arguing, unless what you're arguing is that by saying in my experience it makes it not false. But that would be just a complete way around. I mean, every expert could just get up and say in my experience, and the reason they're there is because they're an expert about this subject. That can't possibly mean that experts can just get up and say in my experience and then say false things. I understand the Court's point, and I understand the Court's concern. I think we do have to limit our review of this to sort of the specific language that this Court used in Venagos-Renoso. I mean, the Court was very clear that it was looking at a high level of specificity in the officer's testimony that could be actually proven to be false. So as the Court said in Venagos-Renoso, if the testimony was that drug traffickers do not and would not ever utilize blind mules to import large quantities of drugs, that would be false. And I submit that the testimony here did not in any way rise to that level. Moreover, the second prong of his statement was that it's not typical for drug organizations to have people who are unfamiliar with drug trafficking go to their stash house locations. I think that's totally outside of the ambit of this blind mule. It's the first statement. I mean, that one has typical, so there's some wiggle room. But when you say they do not do this, it's really hard for me to understand what saying you do not do this and then saying they do not do this and they do not ever do this. I mean, that's the same. Logically, there's no difference in the logic of those statements. It's just an emphasis. There's no wiggle room in they do not do this. It's not like they sometimes don't do this or they often don't do this. It's just they don't do this. I see the court's concern. I would argue, Your Honors, however, on plain error review where this was not. Where the government's been warned twice by our court already, and I mean at least twice, to not do this anymore. And then after those warnings, it comes in and does this again. It's sort of shocking to me. Your Honor, well, I would argue initially that, I mean, and I know NAPUI doesn't, it doesn't matter, but the government's intent or actual knowledge isn't at issue here. But I'm not in no way suggesting that this was purposefully done in order to get out from whatever the court had said before. But I do, I hear the court's concern. In my mind, there is a distinction because that officer's statement was not actually false. And it's not to imply that officers can use gamesmanship to get around it by saying, in my experience. But in his experience, they don't do this. And I think we do have to narrow the focus onto the blind mule context because that's where all of this stems from, the existence of the Chavez complaint in the blind mule context. And Vanagas-Renoso makes clear it's not that they do not do this. It's also that they would not ever do this. And there's a certainty there in that type of testimony that I just believe is absent here, especially on plain error review. And I hear the court's concerns, but NAPUI error is an extremely high standard that has to be met here. This wasn't litigated below. It's on plain error review. The officer's statements, I do not believe, meet the standard of what was set forth in Vanagas-Renoso for absolute falsity. I just don't believe it's present on this record. Help me out on one thing. I mean, I thought Vanagas-Renoso was sentenced upon what was reasonably foreseeable, and your opposing counsel says I'm wrong. In a conspiracy case, it seems to me you don't attribute drugs to a defendant that he had no reason to foresee. That's my understanding of the case law. I mean, I'm an appellate attorney. I'm not in the trial court every day. But my understanding is it's what was reasonably foreseeable to this defendant. We don't have to prove that the defendant actually knew that there were 10 kilograms specifically in that car, and this issue was litigated pretrial in front of Judge Fischer and resolved. And then let me ask you a related question. Do you understand cardiacus to be a bright-line test or do you as to require the exercise of judgment? Well, Your Honor, I was actually rereading cardiacus this morning because I have to admit I don't fully know how to answer your question. I mean, it seems to me that cardiacus, it doesn't mean that every conspiracy, you know, you've got nil. Well, in my understanding, the reason why I didn't trouble myself too much with cardiacus is because that really was a multiple conspiracy case where there were multiple defendants being tried at the same time. I mean, the severance raises a different context. It involves consenting. It involves severance. I've never understood it as being so clear that in every case where there are different actors means that it's cardiacus applause. Right, and this Court has clearly held, and I believe it's Fregas and Taralba-Mendia, that, you know, you can have a single overarching conspiracy and subagreements and subconspirators in it, and as long as there is a slight connection, and that's the term the Ninth Circuit uses to the larger conspiracy, the evidence is sufficient. I don't know if the Court—I actually have— No, you're over. You're four and a half, almost five minutes over. Well, does the Court have any questions about Guzman-Sanchez's cross-examination that I could answer for the Court or Cavalier's testimony? No? No, I think we're good. Thank you for your arguments. We took you way over, so why don't we give you two minutes for rebuttal. Thank you very much. Okay, this is going to be a little stream of consciousness, so I apologize. First of all, for the phone call that supposedly shows that Mr. Rubio knew that there was something bigger going on, counsel referenced a phone call that's in my excerpts at page 550, and she didn't give it the full context. So Nell calls this unidentified person and says, How have you been? Fine. You and yourself just here? All right, look, I wanted to ask you a question. To get over there, which freeway is closer for me? Then the guy says, I am going to let you talk to a cousin because he knows all about that. That's where he knows all about that comes from. How to get from Mexicali to L.A., not some large drug conspiracy. And if you look at the phone calls that are included, there's nothing on the calls that Mr. Rubio is on that talks about anything except directions. Second of all, I wanted to point out that as to – oh, for Cariacos. I want to be really clear, Your Honor. I am not saying he has to know any of the other conspirators or any of the other spokes. He has to have reason to know that they exist and that his success depends on the success of the entire venture. And I know I've quoted that in some of my briefs, and I believe Kenny is one of the cases that's in my brief that talks about it. We are not talking about a bright line, you have to know every other person. But you have to know that you're involved in more than one load. The involvement of this load is somehow or another pushing the goals of an organization further along for something, and that was absent here. Third, I recognize that the proof for the possession charge is or can be different than the proof for the conspiracy charge. My view is that it's actually more difficult because for conspiracy, all you have to show is an agreement. For the possession, you actually have to show that he knew about it and he either possessed it or aided and abetted the possession with intent to distribute. And there's no evidence that he did anything to assist this person who was already driving the car in possessing the drugs with intent to distribute. What was he doing in the Toyota? What was your client doing in the Toyota? There's no evidence, and it's the government's evidence to... No, no, no. The government proved that he was in the Toyota under suspicious circumstances. There's no evidence. There's no evidence about what he was doing in the car. I mean, look, I'm not here to tell the court what I think might have happened, right? But that's not what we do on appeal. We say, what was the evidence? The government had a burden. The government's burden was to prove knowledge and dominion and control over the drugs, and they didn't prove what he was doing inside the vehicle. To me, that's insufficient evidence. Why did he try to take control of the vehicle after the fact, after the stop? Well, there was evidence that he didn't have a way to get home and that he lived in Washington. There is evidence on the record that shows that. So, you know, he asked one of the local officers if he could use his cell phone to call for a ride because he didn't have a way to get anywhere else. And he then went to the police station with the police officers but then walked away? Is that what happened? Yeah, I think they left him sitting on the sidewalk or something. I mean, I do have a suspicion that they didn't really know what to do with him. I think they were waiting for directions from the DEA or whatever. But, yeah, he just wandered away, and nobody did anything with him for several years after. But he actually voluntarily got in the police car and went to the police station? I believe so. To make a phone call at least initially? Yeah, I believe so. So if the court doesn't have any other questions, I just wanted to clarify those few things. I have one more question, actually, about the issue of the dual role testimony. Yeah. Did the jury have any reason to know that Cavalier was testifying in an expert capacity at any point? Because the issue about dual role is that you use the expert testimony to give an imprimatur to the fact testimony, but I can't really tell from reading this whether the jury would have had any reason to think of that guy as giving expert testimony. I believe they probably didn't go through the colloquy that you sometimes see saying I'd like to have so-and-so recognized or designated as an expert. But he did persistently through – first of all, he talked about his experience at the very beginning, right? So he laid out – Well, as a fact witness, though, too, right? Because he was one of the investigators, so that's hard to separate. But you don't need to explain your – I mean, you have people – you have civilian witnesses all the time who are allowed to testify to facts without explaining their background. I mean, he actually observed stuff. He didn't need to say I'm this well-trained person who's been involved in X number of drug investigations and I listened to zillions of wiretaps and things like that. So I think his training experience actually does tend to portray him differently than a typical civilian fact witness. Second of all, I believe he said – couldn't tell you exactly how many times, but certainly it's been conceded by the government he did this at least a couple of times that he was making statements based on his training and experience. And that's the sort of thing that experts do, meaning I have this fund of knowledge inside of my head that I have built up over time and years that allows me to give you this information that puts me in a different position than the lay witness who comes in, like the officers who stop the car. I saw the car, I pulled the car over, it made an illegal turn, and I stopped it. Any other questions? Okay, thank you both for the very helpful arguments. The case is submitted and we're adjourned for the week. Have a great weekend.
judges: Watford, Friedland, Motz